IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LATANJA V. L., | ) |
|     Plaintiff, | ) No. 20 C 2789 |
| v. | ) Magistrate Judge M. David Weisman |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Latanja V. L. appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Acting Commissioner's decision.

## Background

On June 10, 2014, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 15-27, 92, 112-13.) The Appeals Council declined review, and plaintiff appealed to this Court, which remanded for further proceedings. (R. 1-3, 1078-90.) On remand, after another hearing, the ALJ again denied plaintiff's application. (R. 986-1004.) Plaintiff did not appeal the decision to the Appeals Council, and Appeals Council did not otherwise assume jurisdiction over it, leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 1, 2004, the alleged disability onset date. (R. 989.) At step two, the ALJ determined that plaintiff has the severe impairments of "Lupus, Rheumatoid Arthritis, and Obesity – Status Post Bariatric Surgery." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 991.) At step four, the ALJ found that plaintiff has the RFC to perform light work with certain exceptions, including her past relevant work as a teller, an accounts payable manager, a customer service representative, and an assembler, and thus she is not entitled to Disability Insurance Benefits. (R. 992-1002.) The ALJ also found, for purposes of plaintiff's claim for Supplemental Security Income, that she had no past relevant work but has the RFC to perform jobs that exist in significant numbers in the national economy, and thus is not disabled. (R. 1002-04.)

Plaintiff argues that the ALJ erroneously assessed the opinions of Dr. Seymour, plaintiff's primary doctor. Under the regulations in force when plaintiff filed her application, the ALJ is required to give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

3

Dr. Seymour gave a number of opinions spanning almost a decade. On June 25, 2011 and December 12, 2013, respectively, Dr. Seymour opined that plaintiff had lupus, which caused joint swelling, hair loss, edema, and body sores, she could stand, sit and/or walk for less than three hours per day, and had limited ability to lift, climb, bend, and stoop. (R. 742, 820.) He said plaintiff could not return to her current occupation but she was a candidate for rehabilitation, could work with job modifications, and recommended that she participate in vocational counseling or retraining. (R. 742, 820.) On June 18, 2014, in response to an inquiry from plaintiff's disability insurer, Dr. Seymour said that plaintiff was unable to perform full-time, sedentary work because she has "problems with severe swelling and pain related to rheumatoid arthritis/lupus." (R. 967.) On September 21, 2015, Dr. Seymour said plaintiff could not work full time because she experienced "severe swelling in her legs with increased activity" due to rheumatoid arthritis and lupus. (R. 693.) He said plaintiff "may be able to muddle through a week or two but would not be able to sustain [working] routinely." (*Id.*) On November 14, 2019, Dr. Seymour filled out a physical capacity questionnaire at the request of plaintiff's counsel. He said he had treated plaintiff for more than fifteen years for lupus, which causes "fatigue, multiple joint pains, swelling in legs, [and] recurrent eye inflammation." (R. 1904.) He further said plaintiff could sit for no more than thirty minutes at a time, stand for no more than ten minutes at a time, could sit and stand/walk less than two hours of an eight-hour workday, would need to walk around for two minutes every thirty minutes and be able to shift positions at will, and would need unscheduled breaks "very frequently" during the workday. (R. 1906-09.)

The ALJ did not give "controlling . . . or even great weight" to these opinions because: (1) Dr. Seymour is a primary care physician, not a specialist; (2) his opinions appear to be based on "subjective allegations;" (3) his June 18, 2014 opinion that plaintiff could not perform sedentary

4

work was unsupported and inconsistent with the functional capacity evaluation ("FCE") performed in May 2014; and (4) the physical capacity questionnaire he completed on November 14, 2019 was accompanied by a letter that said "[p]lease do not complete [the form] if you believe you are unable to do so favourably," and "suggested a dramatic decrease in [plaintiff's] ability to function" that "[was] not supported by the most recent medical records." (R. 1000.)

Though the ALJ correctly noted that Dr. Seymour is not a specialist, she failed to consider that he had treated plaintiff every six months for more than fifteen years. (R. 1904.) Moreover, the ALJ's assertion that the doctor's opinions were based only plaintiff's subjective allegations is belied by the opinions themselves, which also contain objective findings of hair loss, severe swelling, body sores, elevated markers of inflammation, a positive ANA test[1] and bouts of vitritis and iritis.[2] (*See* R. 693, 820, 942, 967, 1904.) Further, the record does not support the ALJ's claim that Dr. Seymour's June 25, 2011 opinion conflicts with his exam notes from the same day, as those notes say that plaintiff was easily fatigued, had hair loss, and edema. (R. 855-56.) It is true that Dr. Seymour's June 18, 2014 opinion that plaintiff could not do full-time sedentary work conflicts with the May 2014 FCE, which found that plaintiff could "perform[] at least a 4 hour day and/or within the medium work classification." (*See* R. 942.) But the FCE was performed on behalf of plaintiff's disability insurer, which had an incentive to find her able to work (*see id.*), and, contrary to the ALJ's assertion, Dr. Seymour's opinion is supported by medical records from the same time period. (*See* R. 510, 515-16, 521 (Dr. Seymour's exam notes dated 8/21/14 and

---

[1] ANA stands for antinuclear antibodies, and "a positive ANA test indicates . . . an autoimmune reaction." https://www.mayoclinic.org/tests-procedures/ana-test/about/pac-20385204 (last visited April 5, 2022).

[2] Vitritis is "[i]nflammation of the vitreous body," [*i.e.*, "the gel-like fluid that fills [the] eye," https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/vitreous-detachment (last visited April 5, 2022)] characterized by the presence of inflammatory cells and protein exudate in the vitreous cavity." https://www.ncbi.nlm.nih.gov/medgen/68620 (last visited June 24, 2021). Iritis "is swelling and irritation (inflammation) in the colored ring around [the] eye's pupil (iris)." https://www.mayoclinic.org/diseases-conditions/iritis/symptoms-causes/syc-20354961 (last visited April 5, 2022).

8/22/14 noting chronic hair loss and edema and stating "[p]ositive for myalgias[3] and joint pain"); R. 525-30 (Dr. Seymour's exam notes dated 9/12/14 stating that plaintiff has chronic edema and hair loss and was "positive for myalgias and joint pain"); R. 537 (Dr. Seymour's exam notes dated 11/5/14 stating that plaintiff has chronic edema and hair loss); R. 656 (Dr. Francis' exam notes dated 8/1/14 stating that plaintiff had bilateral trace pitting edema and tender fingers, wrists, shoulders, and right elbow).) Finally, the record rebuts the ALJ's assertion that the 11/14/19 functional capacity questionnaire completed by Dr. Seymour was not supported by contemporaneous medical records. In fact, the medical records suggest that plaintiff was in the midst of a rheumatoid arthritis flare[4] at the time Dr. Seymour filled out the questionnaire. (*See* R. 1713-14 (Dr. Seymour's noted dated 9/25/19 stating that plaintiff was positive for fatigue, arthralgias[5] and myalgias); R. 2286 (Dr. Seymour's notes dated 11/15/19 stating the problems addressed at the visit were fatigue, edema, iritis, and positive ANA, and noting mild edema in plaintiff's legs); R. 2186 (Dr. Lowden's notes dated 12/12/19 stating that, over the last month, plaintiff had had "worsening joint pain with a rheumatoid arthritis flare" and had received a steroid injection).) In short, the ALJ's stated reasons for rejecting Dr. Seymour's opinions are not supported by the record. Accordingly, this case must be remanded for reconsideration of the medical opinion evidence.

---

[3] "Myalgia describes muscle aches and pain, which can involve ligaments, tendons and fascia, the soft tissues that connect muscles, bones and organs. Injuries, trauma, overuse, tension, certain drugs and illnesses can all bring about myalgia." https://www.hopkinsmedicine.org/health/conditions-and-diseases/myalgia (last visited April 5, 2022).

[4] "Rheumatoid arthritis (RA) is a disease of ups and downs. One day, your joints feel pretty good. The next, swelling and pain ratchet up and you can barely get out of bed. These symptom episodes – called flares – can be unpredictable and debilitating." https://www.arthritis.org/diseases/more-about/understanding-rheumatoid-arthritis-flares (last visited April 5, 2022).

[5] "Arthralgia describes joint stiffness." https://www.hopkinsmedicine.org/health/conditions-and-diseases/arthralgia (last visited April 5, 2022).

**Conclusion**

For the reasons set forth above, the Court reverses the ALJ's decision, denies the Commissioner's motion for summary judgment [22], and in accordance with the fourth sentence of 42 U.S.C. § 405(g), remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                     ENTERED:  April 5, 2022


                                                                  _____
                                                                  **M. David Weisman**
                                                                  **United States Magistrate Judge**